# AFFIDAVIT IN SUPPORT OF SEIZURE WARRANT APPLICATION

I, Roger "Chad" Johnson, Task Force Officer, Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), Chattanooga Field Office, Chattanooga, Tennessee, being duly sworn, do hereby state the following:

I.  Background

   A.  Affiant

   1.  I am a Task Force Officer with the ATF, United States Department of Justice, and am empowered by law to investigate and to make arrests for offenses involving the financial infrastructure of the United States.

   2.  I have been assigned to the ATF since 2007. I am also currently a Detective with the Marion County Sheriff's Department and have been a Law Enforcement officer since 1999. My prior law enforcement training and experience, and my current duties include investigations of violations of Title 18 of the United States Code and other related state and federal offenses.

   B.  Purpose for Affidavit

   3.  I am the Case Agent assigned to the investigation of possible Title 31 structuring violations, Title 18 money laundering violations, and Title 21 narcotics violations involving multiple accounts at Citizens Tri-County Bank and multiple accounts at First Volunteer Bank assigned to: Jackie B. Morrison (DOB 05-06-1948), Highway 108, Whitwell, Tennessee. Jackie Morrison purports to own a business in Whitwell, Tennessee dealing with construction and mining.

   4.  The statements made in this Affidavit are based, in part, on my personal

knowledge, on my review of bank records, on my own review of cellular phone records, information provided by a confidential informant, and other information furnished to me via discussions with other persons. This Affidavit is submitted solely to establish probable cause for seizure of the property described below, thus I have not set forth every fact known to me regarding the investigation.

### C. Property To Be Forfeited

5. This affidavit is written in support of an application for seizure of the following accounts assigned to Jackie B Morrison (DOB 05-06-1948) doing business as J M Mining Contractors Incorporated and/or Morrison Construction:

| Account Number | Bank | Cash in account as of September 2011 |
| --- | --- | --- |
| 400016658 | Citizens Tri-County | $100,000.00 |
| 400016682 | Citizens Tri-County | $150,000.00 |
| 400016683 | Citizens Tri-County | $100,000.00 |
| 67965 | First Volunteer | $100,000.00 |
| 73552 | First Volunteer | $12,500.00 |
| 400016199 | Citizens Tri-County | $100,000.00 |
| 400016200 | Citizens Tri-County | $100,000.00 |
| 400016223 | Citizens Tri-County | $100,000.00 |
| 400016224 | Citizens Tri-County | $100,000.00 |
| 1036383 | First Volunteer | $232,179.43 |
| 403004401 | Citizens Tri-County | $79,352.43 |
| **Total** | | **$1,174,031.86** |

### D. Applicable Criminal Laws

6. Title 31 U.S.C. § 5317(c)(2) provides for the forfeiture of "any property involved in a violation of 31 U.S.C. § 5313, 5316, or 5324, or any conspiracy to commit

2

any such violation, and any property traceable to any such violation or conspiracy," and that such property shall be forfeited in accordance with 18 U.S.C. § 981(a)(1)(A).

7. I am advised that, pursuant to 18 U.S.C. § 981, civil forfeiture is triggered by the structuring of cash deposits in violation of 31 U.S.C. 5324, and that, as the Supreme Court has noted, willfulness is not an element of a civil forfeiture action for property involved in a structuring violation. United States v. Ratzlaf, 510 U.S. 135, 146 n.16 (1994). Thus, for purposes of seizure and forfeiture of assets involved in or traceable to structured cash transactions, it simply does not matter whether the structuring was accomplished willfully, because willfulness is not an element of a civil forfeiture case. Accordingly, the information in this affidavit is being submitted solely to establish probable cause that the cash deposits by Jackie Morrison and/or his agents into account number 403004401 at Citizens Tri-County Bank and account number 1036383 at First Volunteer Bank at branch locations that are located in the Eastern District of Tennessee were divided in amounts less than $10,000.00, in such a manner so as to avoid the filing of Currency Transaction Reports (as defined below in this affidavit).

8. Therefore, as described below in this affidavit, the bank accounts utilized to conduct the structured deposits during the period of August 2005 to September 2011 by Jackie Morrison and other unknown parties, are subject to seizure and forfeiture.

## II. Facts Establishing Probable Cause

### A. Currency Transaction Report Regulations

9. Title 31, U.S.C. Section 5313 and 31 C.F.R. Part 103 of the Bank Secrecy Act (BSA) require any financial institution that engages with a customer in a currency transaction (i.e., a deposit or withdrawal) in excess of $10,000.00 to report the transaction to the IRS on FinCEN Form 104, Currency Transaction Report ("CTR"). These regulations also require that multiple transactions be treated as a single transaction, if the financial institution has knowledge that they are by, or on behalf of, the same person; and they result in more than $10,000.00 in currency either being received or disbursed by the financial institution during any one business day.

10. CTRs are often used by law enforcement to uncover a wide variety of illegal activities including currency violations and money laundering. Many individuals involved in these illegal activities are aware of such reporting requirements and take active steps to attempt to cause financial institutions to fail to file CTRs. These active steps are often referred to as "smurfing" or "structuring" and involve making multiple cash transactions, in amounts no greater than $10,000.00, to multiple banks and/or branches of the same bank on the same day or consecutive days. Such structuring is prohibited by 31 U.S.C. 5324(a)(3).

4

## B. Examination of First Volunteer Bank Accounts and Citizens Tri-County Bank Accounts.

11. During the course of this investigation, I obtained the bank records for accounts at Citizens Tri-County Bank and for accounts at First Volunteer Bank that are maintained by Jackie Morrison. The records indicate that Jackie Morrison opened checking account 1036383 at First Volunteer Bank on March 31, 1999 with an initial deposit of $12,005.61. Jackie Morrison made regular structured cash deposits into account 1036383 at First Volunteer Bank until the account would reach an average of $150,000. At the same time he made the structured depositions, Morrison also made deposits of checks that were written to him (Jackie Morrison) for various types of construction. Jackie Morrison would then write a check to First Volunteer Bank to purchase a certificate of deposit (CD). Jackie Morrison would then close the CDs at First Volunteer Bank and transfer them into CDs at Citizens Tri-County Bank thus creating the following Citizens Tri-County Bank CD accounts:

| (CD) Account Number | Date Opened | Amount of cash in account |
|---|---|---|
| 400016658 | July 22, 2008 | $100,000.00 |
| 400016682 | January 08, 2009 | $150,000.00 |
| 400016683 | January 08, 2009 | $100,000.00 |

12. Jackie Morrison also has two active CD accounts at First Volunteer Bank that were also created using the cash from structured deposits into account 1036383 at First Volunteer Bank. On February 06, 2009, Jackie Morrison closed CD account 49127 at First Volunteer Bank, which contained $50,000.00; the same date Jackie

5

Morrison wrote a $50,000 check from account 1036383 at First Volunteer Bank and created the following First Volunteer Bank CD account:

| (CD) Account Number | Date Opened | Amount of cash in account |
| --- | --- | --- |
| 67965 | February 06, 2009 | $100,000.00 |

13. The second active CD account that Jackie Morrison has at First Volunteer Bank was created on July 29, 2011 by Jackie Morrison writing a $12,500.00 check from account 1036383 at First Volunteer Bank and creating the following First Volunteer Bank CD account:

| (CD) Account Number | Date Opened | Amount of cash in account |
| --- | --- | --- |
| 73552 | July 29, 2011 | $12,500.00 |

14. Jackie Morrison also has the following Citizens Tri-County Bank CD accounts for which there were no additional records provided by the bank in order to show how they were created.

| (CD) Account Number | Date Opened | Amount of cash in account |
| --- | --- | --- |
| 400016199 | April 21, 2003 | $100,000.00 |
| 400016200 | April 21, 2003 | $100,000.00 |
| 400016223 | August 6, 2003 | $100,000.00 |
| 400016224 | August 6, 2003 | $100,000.00 |

15. A final analysis of all of the above CD accounts from both First Volunteer Bank and Citizens Tri-County Bank indicates that interest from the CD accounts is deposited back into account number 1036383 at First Volunteer Bank and into account

6

number 403004401at Citizens Tri-County Bank on a monthly basis with the majority of the interest going into account number 1036383 at First Volunteer Bank. There has been a total of $163,083.30 in interest acquired by all of the above CD accounts since 2005.

16. I examined and analyzed the Citizens Tri-County Bank records for account number 403004401 from August 2008 through August 2011. The records reveal that the account was created on July 28, 2008, when Jackie B. Morrison wrote a $1,000 check from account number 1036383 at First Volunteer Bank to Citizens Tri-County Bank thus creating account number 403004401. Those records revealed the following structured cash deposits made to the Citizens Tri-County Bank.

| Transaction Month | Total of structured cash transactions for month |
| --- | --- |
| August 22, 2008 | $9,000.00 |
| September 15, 2008 | $9,260.00 |
| October 24, 2008 | $9,910.00 |
| November 07, 2008 | $9,450.00 |
| November 20, 2008 | $9,595.00 |
| January 29, 2009 | $9,030.00 |
| February 06, 2009 | $4,000.00 |
| October 23, 2009 | $6,000.00 |
| November 25, 2009 | $8,000.00 |
| February 25, 2011 | $5665.00 |
| March 07, 2011 | $7,000.00 |
| July 18, 2011 | $9,000.00 |
| July 26, 2011 | $8,000.00 |
| August 08, 2011 | $5,710.00 |
| **Total Cash Deposits** | **$109,620.00** |

17. All of the above cash deposits to Citizens Tri-County Bank were for an "even" dollar amount. All deposits included cash amounts of $9,910.00 or less. The

amounts totaled in excess of $109,620.00. It would be difficult to conceive a scenario which would legitimately explain the cash deposit pattern other than a deliberate attempt to avoid the CTR reporting requirement.

18. I examined and analyzed the First Volunteer Bank records for account number 1036383 from August 2005 through September 2011. Those records revealed the following structured cash deposits made to the First Volunteer Bank:

| Transaction Date | Total Structured Cash Transaction |
| --- | --- |
| September 15, 2005 | $9,000.00 |
| February 2, 2006 | $9,999.00 |
| February 9, 2006 | $9,900.00 |
| June 7, 2006 | $7,610.00 |
| August 3, 2006 | $9,250.00 |
| August 4, 2006 | $8,900.00 |
| August 10, 2006 | $8,150.00 |
| April 6, 2007 | $2,484.27 |
| June 19, 2007 | $9,000.00 |
| July 2, 2007 | $9,000.00 |
| August 29, 2007 | $9,000.00 |
| September 7, 2007 | $9,800.00 |
| September 12, 2007 | $9,500.00 |
| September 14, 2007 | $9,000.00 |
| October 26, 2007 | $2,600.00 |
| March 10, 2008 | $4,000.00 |
| March 14, 2008 | $9,000.00 |
| April 1, 2008 | $9,350.00 |
| April 3, 2008 | $9,000.00 |
| April 16, 2008 | $2,744.17 |
| June 6, 2008 | $9,000.00 |
| June 17, 2008 | $9,500.00 |
| July 1, 2008 | $9,000.00 |
| August 22, 2008 | $6,000.00 |
| September 15, 2008 | $9,600.00 |
| September 26, 2008 | $9,000.00 |
| November 7, 2008 | $7,000.00 |
| January 29, 2009 | $9,000.00 |

| | |
|---|---|
| February 6, 2009 | $5,000.00 |
| May 8, 2009 | $5,000.00 |
| June, 5 2009 | $8,000.00 |
| July 17, 2009 | $7,420.00 |
| October 6, 2009 | $8,555.08 |
| December 14, 2009 | $6,000.00 |
| January 4, 2010 | $5,000.00 |
| February 25, 2011 | $7,000.00 |
| March 14, 2011 | $6,795.00 |
| July 7, 2011 | $5,000.00 |
| July, 11, 2011 | $9,000.00 |
| July 22, 2011 | $7,000.00 |
| June 29, 2011 | $5,275.00 |
| September 6, 2011 | $5,000.00 |
| September 8, 2011 | $9,000.00 |
| **Total Cash Deposits** | **$327,372.52** |

19. Forty one of the forty four cash deposits to First Volunteer Bank shown above were for "even" dollar amounts. All deposits included cash amounts of $9,999.00 or less. The structured deposits shown above total $327,372.52. It would be difficult to conceive a scenario which would legitimately explain the cash deposit pattern other than a deliberate attempt to avoid the CTR reporting requirement. At numerous dates in which Morrison made structured deposits, he also deposited checks that were written to him for various types of construction work. This again shows an attempt to cover up money acquired from illegal activity with money that may have been acquired through legitimate business work.

20. The accounts maintained at Citizens Tri County Bank and First Volunteer Bank indicates that Jackie Morrison does business as "Morrison Construction." Additional research through public databases reveals that Jackie Morrison purports to be the president of "JM Mining Contractors Incorporated" located at residential address

9

6973 Highway 108 Whitwell, Tennessee 37397 (Marion County, Tennessee). The public database also indicates that JM Mining Contractors Incorporated is estimated to employee twelve people and has an annual sales estimate of $930,000.00 per year. Additional research done by your affiant with the Marion County Court Clerk Office on October 31, 2011 indicates that Jackie Morrison has never received any type of business license to operate a business in Marion County, Tennessee and that Jackie Morrison has never paid any type of business-related sales tax to Marion County, Tennessee.

21. During the course of this investigation, your affiant has met with Marion County Sheriff's Office Detective Matt Blansett and received information in regards to a burglary that occurred at Jackie Morrison's residence at 6973 Highway 108 Whitwell, Tennessee around August 2010. Blansett advised your affiant that the burglary was originally called into the Sheriff's Office by Morrison's stepson, Michael Austin. Blansett stated that Jackie Morrison arrived home shortly after Michael Austin had reported the burglary. Blansett further stated that Jackie Morrison provided him (Blansett) with a home phone number (423-658-9629) and a cellular phone number (423-883-5706). Blansett also stated that Jackie Morrison told him (Blansett) that the only thing missing from the residence was a safe containing bundles of $100 and $20 bills totaling $48,000 cash. Blansett stated that in the end Jackie Morrison did not want an official police report filled on the incident.

22. A subpoena was issued for records related to Verizon cellular number 423-883-5706. A review of the account indicates that Jackie Morrison was assigned

10

cellular number 423-883-5706 from February 2006 to August 2010 and that there was a new active number on the account. A review of the toll records for 423-883-5706 indicates that between January 2007 and July 2010, a telephone registered with cellular number 423-883-5706 was used on at least 15 separate days to place calls from an area just south of Dallas, Texas. This information is based on the originating city and state from which calls were placed by cellular number 423-883-5706. An analysis of the toll records indicates that from January 2007 to August 2010, there were 243 calls made between cellular number 423-883-5706 and phone numbers that have a 956 area code, which is the area code that covers Laredo, Texas. The analysis also indicated that from January 2007 to August 2010, there were 76 calls made between cellular number 423-883-5706 and landline number 423-942-0940. The analysis further indicated that from January 2007 to August 2010, there were 795 calls made between cellular number 423-883-5706 and cellular number 423-802-9637. Additional research has indicated that 423-942-0940 and 423-802-9637 are phone numbers that are registered to Sammy Nance, a convicted marijuana distributor from Marion County, Tennessee. Furthermore your affiant knows, based on his training and experience, that Laredo, Texas is major source city for controlled substances that enter the United States from Mexico.

23.  A subpoena was issued for records related to Verizon account number 520364266-1. A review of the account indicates that Jackie Morrison was assigned cellular number 423-637-9757 from August 2010 to present date. A review of the toll records for that number indicates that from August 2010 through October 2011, a

11

telephone registered to cellular number 423-637-9757 was used to make phone calls on at least 4 separate days from unknown cities in Texas. This information is based on the originating switch tower that calls were placed from by cellular number 423-637-9757. According to information obtained from Verizon, a switch tower covers a large geographical area in the state where the switch tower is located, therefore your affiant has not been able to narrow the calls down to an exact city in Texas. An analysis of the toll records indicates that from August 2010 to August 2011, there were 78 calls made between cellular number 423-637-9757 and phone numbers that have a 956 area code, which is the area code that covers Laredo, Texas; additionally 29 of those calls were made between 423-637-9757 and 956-949-2537 and 1 of those calls was made between 423-637-9757 and 956-728-1293. The analysis further indicated that from August 2010 to August 2011, there were 147 calls made between cellular number 423-637-9757 and cellular number 423-802-9637, a number that has been previously identified as being used by Sammy Nance. Additional research has indicated that 956-949-2537 is a number that is used by Julio Barbosa Sr. and 956-728-1293 is a number that is used by Julio Barbosa Jr. Information obtained by your affiant indicates that Julio Barbosa Sr. and Julio Barbosa Jr. are known sources of supply for marijuana and cocaine and that both reside in Laredo, Texas. Your affiant has conducted a criminal history search of Julio Barbosa Sr. and Julio Barbosa Jr. and knows that both men have convictions in Federal Court for trafficking marijuana. Your affiant has also obtained financial records for Julio Barbosa Sr. and Julio Barbosa Jr. and a review of those records indicates that they (Julio Barbosa Sr. and Julio Barbosa Jr.) too are both

12

engaged in structuring and funneling of cash deposits at Compass Bank and Wells Fargo Bank located in Dallas and Laredo, Texas.

24. An additional analysis of Jackie Morrison's financial records from First Volunteer Bank indicate that on July 18, 2011, Morrison wired $11,000 from account number 1036383 to account number 2110032332, which is assigned to Julio Javier Barbosa Sr. at the International Bank of Commerce in Laredo, Texas. Your affiant is also aware that on the wire transfer request the name "July J Barbosa" was put as the name of the person that would be receiving the transfer.

25. On October 24, 2011, October 27, 2011, and November 04, 2011, your affiant utilized a confidential informant (CI) to make controlled purchases of marijuana from Sammy Nance. On all occasions, the CI either called or exchanged text messages between Sammy Nance on cellular number 423-802-9637 to arrange the meeting. During the controlled purchases, the CI was wearing an audio/video recording device.

26. Your affiant has reviewed the recording from the October 24, 2011 controlled purchase, and on the recording Sammy Nance and the CI are engaged in a conversation about the "Feds" watching everyone. Your affiant heard Sammy Nance tell the CI that Nance's source of supply is scared that the "Feds" have all the cell phone towers bugged and are listening into everyone's conversations. Your affiant also heard Sammy Nance tell the CI that Nance's source of supply just returned from picking up a load of marijuana within the past couple of weeks. Sammy Nance also told the CI that Nance's supplier would be facing "trafficking and kingpin" charges if the

13

"Feds" ever got him (i.e., the supplier). During the conversation, Sammy Nance also referred to the fact that source of supply may not go get any more marijuana. Sammy Nance also told the CI that he (Nance) had talked to his (Nance's) source of supply on his (Nance's) cellular phone last week. During the recorded conversation, Nance kept referring to the source of supply as "my guy."

27. Your affiant has reviewed recent cellular phone toll records for Jackie Morrison's cellular phone (423-637-9757) and learned that on October 1, 2011 Morrison's cellular phone was making outgoing calls from a switch tower located in Texas. The tolls also show that on October 2, 2011, Morrison's cellular phone (423-637-9757) made a two minute and one second phone call to Nance's cellular phone (423-802-9637) and that based on the switch tower location, it appears that the call was made while Morrison's cellular phone (423-637-9757) was traveling back from Texas toward Tennessee in fact this was the next to last outgoing call that was made by Morrison's cellular phone (423-637-9757) before it arrived back into the Tennessee switch location. The tolls also show that the first outgoing call made by Morrison's cellular phone (423-637-9757) after it arrived into the Tennessee switch was a 34 second call to an unidentified Laredo, Texas-based cellular phone number (956-949-4282). The same cellular phone tolls show that on October 17, 2011, Morrison's cellular phone (423-637-9757) had a two minute and six second conversation with Nance's cellular phone (423-802-9637).

14

## III. Affiant's Training and Experience

28. I have been a police officer since 1999 and I have received specialized training from the Drug Enforcement Administration (DEA), Federal Bureau of Investigation (FBI), and the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) in various methods on investigation. I have attended specialized training that focused on investigations involving street gangs and drug trafficking which was instructed by the Tennessee Gang Investigators Association. I have also attended specialized training that focused on investigative tactics and techniques involving mid-level narcotic and firearms investigations which was instructed by the Dallas, Texas Police Department Narcotics Unit. I have attended specialized training that focused on investigating money laundering, conspiracy, and racketeering cases which was instructed by the Regional Counterdrug Training Academy based in Meridian, Mississippi. I have used overt and covert methods of investigation to include but not limited to undercover operations, search warrant executions, controlled deliveries, and issuance of subpoenas, interview / interrogation, controlled purchases, and long term surveillance operations. I have participated in, organized, and initiated several investigative efforts that have targeted large groups as well as individual drug traffickers, armed drug traffickers, and their criminal organizations. These cases have resulted in felony arrests, convictions, and asset seizures in state and federal court.

29. Based on my training and experience, I know individuals who acquire cash in their trade or business routinely make cash deposits into their bank accounts.

15

Moreover, individuals who regularly acquire cash in their trade or business do not routinely deposit cash consisting of round figures such as $8,950.00, $9,800.00, $9,200.00, and $9,400.00. Rather, these individuals' deposits will consist of "uneven" amounts, such as $3,243.12 or $5,481.38.

30. Based on my training and experience, I know when individuals repeatedly deposit cash in amounts of $7,000.00, $8,000.00, $9,000.00, and up to $9,999.00 they are often breaking down a larger amount of cash into separate deposits of less than $10,000.00 to avoid the filing of a CTR. In short, they are structuring. Furthermore I know based on my training and experience that individuals who acquire money from illegal activity may also use additional money that is acquired legally to "clean" or "launder" the illegally acquired money. I also know based on my training and experience that individuals who acquire their money from illegal activity will also use multiple financial institutions to help avoid the federal filing requirements.

31. Based on my training and experience in conducting narcotics related investigations, I know that it customary for individuals involved in a narcotics conspiracy to have regular phone contact with each other and that it is common for one co-conspirator to contact another co-conspirator after they arrive back home from a narcotics transaction just to let each other know that they made it home without being stopped by law enforcement. (i.e. Morrison having a short conversation with the unidentified Laredo, Texas based cellular number as soon as Morrison arrived back in Tennessee.)

16

## IV. Affiant's Conclusion as to Probable Cause

32. Subpoenaed financial evidence demonstrates that Morrison broke down cash amounts larger than $10,000.00 into amounts less than $10,000.00 when conducting cash deposits at Citizens Tri-County Bank and First Volunteer Bank. The consistency of the pattern of deposits demonstrates that he structured funds to cause Citizens Tri-County Bank and First Volunteer Bank to fail to file Currency Transaction Reports, in violation of 31 U.S.C. § 5324(a)(3).

33. Subpoenaed phone evidence demonstrates that Morrison makes regular one to two day trips to Laredo, Texas, a known source city for controlled substances that enter the United States from Mexico. The evidence further demonstrates that Morrison has regular phone contact with Julio Barbosa Sr., a known and previously convicted multi-pound marijuana distributor who resides in Laredo, Texas, and that most of that contact comes while Morrison's phone is making outgoing calls that are originating from cell towers located in Laredo, Texas. The evidence also demonstrates that Morrison has frequent phone contact with Sammy Nance, a known and previously convicted mid-level marijuana distributor who resides in Marion County, Tennessee.

34. Controlled purchases of marijuana on October 24, 2011, October 27, 2011, and November 4, 2011 from Sammy Nance demonstrate that Nance is continuing to sell marijuana. The recordings between the CI and Nance during the controlled purchases demonstrate that Nance obtains marijuana from a supplier, believed to be Morrison, who travels out of the area to pick up large amounts of marijuana. The

17

recordings also indicate that Nance's supplier traveled out of the area to pick up marijuana a few weeks prior to the October 24, 2011 controlled purchase and that during that trip the supplier obtained enough marijuana to last until December, 2011.

35. Your Affiant believes the above information constitutes probable cause that the $436,945.22 in cash deposits by Morrison, and other unknown parties, to account number 1036383 at First Volunteer Bank and into account number 403004401at Citizens Tri-County Bank were structured to avoid the currency reporting requirements. Additionally during the majority of the cash deposits to First Volunteer Bank there were also checks written to Morrison totaling $334,519.50 deposited at the same time as the cash. Your affiant believes that the checks were deposited along with the cash in an effort to cover up the structuring that Morrison was conducting. Your affiant believes that the CD accounts belonging to Morrison were also created with structured cash that was originally placed in the checking accounts. Your affiant believes that the $163,083.30 in interest acquired by the CD's has also been deposited back into the checking accounts in an effort to cover up the structuring that Jackie Morrison was conducting. Ultimately your affiant believes that the cash money that Morrison has acquired and deposited in a structured manner is proceeds from illegal narcotics activity and subject for forfeiture in accordance with 21 U.S.C. § 853.

36. Based on the facts stated in this case, your Affiant believes there is probable cause for seizure and forfeiture of the accounts at First Volunteer Bank and accounts at Citizens Tri-County Bank pursuant to 18 U.S.C. §§ 981(a)(1)(A), 981(b)(1), and 31 U.S.C. § 5317 (c)(2) based on violations of 31 U.S.C. § 5324(a)(3).

_____
Roger "Chad" Johnson
Task Force Officer
Bureau of ATF


Sworn to and Subscribed to

before me this 15th day of November, 2011


_____
William B. Mitchell Carter
UNITED STATES MAGISTRATE JUDGE

19